IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00032-RM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     LOGAN SCOTT DEBYLE,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through David Tonini, Assistant United States Attorney for the District of Colorado, and the defendant, Logan Debyle, personally and by counsel, Kathryn Stimson, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.  This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.   AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees

(1)    to ~~waive indictment and~~ plead guilty to an Information charging a violation of 18 U.S.C. § 113(a)(5), simple assault (putting another in reasonable apprehension of bodily harm), and

(2)    to waive certain appellate and collateral attack rights, as explained in detail below.

(3)    to recommend a sentence of 1 year probation, a $1,000 fine, and 100 hours of community service.

Court Exhibit

1

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to recommend the same sentence contained in Part I.A.3., "Defendant's Plea of Guilty."  The government further agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado and to move to dismiss Count 1 of the Indictment with prejudice.  Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.  The government agrees that the defendant should receive a two level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a).

**C. Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)     the sentence exceeds the maximum penalty provided in the statute of conviction, 18 U.S.C. § 113(a)(5);

(2)     the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 8; or

(3)     the government appeals the sentence imposed.

If any of these three criteria apply, the defendant may appeal on any ground that is

properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this

prosecution, conviction, or sentence (including the restitution order) in any collateral

attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255. This

waiver provision does not prevent the defendant from seeking relief otherwise available

in a collateral attack on any of the following grounds:

(1)     the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)     the defendant was deprived of the effective assistance of counsel; or

(3)     the defendant was prejudiced by prosecutorial misconduct.

**D. Abandonment of property:**

The defendant agrees that the below-described property, which was seized from

the defendant for evidentiary purposes, and which is currently in the custody or control

of the Federal Bureau of Investigation and/or Denver Police Department, was lawfully

seized and that it is evidence, contraband, or fruits of the crimes to which the defendant

is pleading guilty.  The defendant, as sole and rightful owner, relinquishes and

abandons all claims, title, and interest the defendant has in such property with the

understanding and consent that FBI may dispose of the property without further

obligations.  The specific property includes: a laser pointer and riot gear.

## II.     ELEMENTS OF THE OFFENSE

The parties agree that the elements of Simple Assault (putting another in

reasonable apprehension of bodily harm) are as follows:.

<u>**Count One:  18 U.S.C. § 113(a)(5), 49 U.S.C. § 46506**</u>

First: The defendant assaulted (putting another in reasonable apprehension of bodily harm) the pilots of Air One;

Second: The assault occurred on an aircraft in the special aircraft jurisdiction of the United States.

*United States v. McKinney*, 17 F. App'x 808, 810-11 (10th Cir. 2001) (defining simple assault as an attempt to commit battery or putting another in reasonable apprehension of bodily harm).

### III.   STATUTORY PENALTIES



The maximum penalties for a violation of Count 1 of the Information are: not more than six months' imprisonment; maximum term of supervised release one year; maximum fine $5,000 ~~$100,000~~; maximum term of probation 5 years; $25 mandatory victim's fund assessment fee.

### IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts that may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set

forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial.

On November 4, 2020, at approximately 8:40 p.m., the flight crew of Air One, a helicopter operated by the Denver Police Department, were the targets of a green laser that was pointed at and illuminating the cockpit of the aircraft from Cheesman Park near downtown Denver.  Air One was in the area monitoring large crowds that had gathered and watching for anticipated violence and unrest after the U.S. national election.  The Air One flight crew viewed two men associated with the laser pointer and provided the two men's approximate location to the DPD Command Post.  The DPD Command post ordered ground officers to contact and detain the two men for this conduct.

DPD ground officers responded and located the two men.  When officers attempted to contact the two men by saying, "Denver Police, Stop," the two men fled and refused commands to stop.  One man, later identified as LOGAN SCOTT DEBYLE, was "zig-zagging" in an effort to avoid apprehension by a DPD officer.  DEBYLE, however, was apprehended and taken into custody.  During a search incident to arrest, a laser pointer was found in the outer pocket on the left side of DEBYLE's jacket.

DEBYLE was transported to the Denver Downtown Detention Center and interviewed.  Prior to starting the interview, DEBYLE was advised of his rights under the

Miranda decision.  DEBYLE acknowledged that he understood his rights and he agreed to waive those rights and speak with the officer.  The interview was recorded. According to a summary of the interview, when asked why police were chasing after him, DEBYLE responded "They thought I was- they thought I had a laser.  Or I did have a laser.  I was harassing the helicopter.  That's what I found out afterwards."  DEBYLE further said about why he had the laser, he was "just sorta playing around with it."

The man who was with DEBYLE in Cheesman Park ("PERSON 2") was also apprehended and brought to the Denver Downtown Detention Center for an interview. PERSON 2 advised that he understood and he agreed to waive his rights.  The interview was recorded.  According to a summary of the interview, PERSON 2 said that he went to what was described as a rally with DEBYLE.  After he heard a loud bang, he thought things were going to escalate so he went home to get a gas mask and eye protection.  He returned, saw commotion, and headed south, ending up in Cheesman Park.  PERSON 2 said, "I did notice Logan point the green laser pointer at the helicopter.  And I laughed and I was like dude you know you can get in trouble for that."

PERSON 2 decided that he wanted to distance himself from Logan and went under a tree.  PERSON 2 said that he noticed Logan was still doing it (i.e., pointing the laser at the cockpit of Air One) and that he saw Logan do it on two separate instances. PERSON 2 denied that he had shined a laser pointer at anyone that night.  PERSON 2 described that his interest was in viewing civil discontent.

Two pilots of Air One were interviewed.  One reported that because of the laser strike he was distracted and had to divert his eyes into the aircraft to avoid being struck in the eyes with the laser beam.  He had no long-term effects as a result of the laser

strikes.  The second pilot reported that he was flying low level next to tall buildings and

the laser strikes were definitely a distraction to him as he tried to fly safely.  The laser

strikes appear as bright green flashes that bounced off the inside of the aircraft.  As

soon as he saw the first flash, he donned his laser protection glasses to protect his

eyes.  He commented that laser strikes are more dangerous in a helicopter than they

are in a fixed wing aircraft because helicopters have high visibility doors.  He did not

receive any medical treatment and has not had any long-term effects from the strike.

## VI.    ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is

governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed,

the Court is required to consider seven factors. One of those factors is the sentencing

range computed by the Court under advisory guidelines issued by the United States

Sentencing Commission. In order to aid the Court in this regard, the parties set forth

below their estimate of the advisory guideline range called for by the United States

Sentencing Guidelines. To the extent that the parties disagree about the guideline

computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is

only an estimate.  The parties understand that the government also has an independent

obligation to assist the Court in making an accurate determination of the correct

guideline range.  To that end, the government may argue that facts identified in the

presentence report, or otherwise identified during the sentencing process, affect the

estimate below.

N/A    a)    ~~Under~~ Section 2A2.3(a)(2), the base offense level is 4.

b)      Under Section 3A1.2(b), 6 levels are added because the victims were government officers or employees, and the offense of conviction was motivated by such status.

c)      The adjusted offense level is 10.

d)      Under Section 3E1.1(a), 2 levels are subtracted because the defendant clearly demonstrated acceptance of responsibility for his offense. The resulting total offense level is 8.

e)      The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

f)      The career offender/criminal livelihood/armed career criminal adjustments do not apply.

g)      The advisory guideline range resulting from these calculations is 0 to 6 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 0 months (bottom of Category I) to 24 months (top of Category VI). But the guideline range cannot exceed the statutory maximum of 6 months' imprisonment.

h)      Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $2,000 to $20,000, plus applicable interest and penalties.

i)      Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term shall be one year.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: _____                     _____
                                          LOGAN SCOTT DEBYLE
                                          Defendant

Date: _____                     _____
                                          KATHRYN STIMSON
                                          Attorney for Defendant

Date: _____                     _____
                                          DAVID TONINI
                                          Assistant U.S. Attorney